## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Anne K. Alfano
60 High Point Drive, Unit 9
Medina, Ohio 44256

    Plaintiff,

vs.

The Board of Education of Cuyahoga Falls
City School District
431 Stow Ave
Cuyahoga Falls, OH 44221

and

Todd Nichols;
c/o The Board of Education of Cuyahoga
Falls City School District
431 Stow Ave
Cuyahoga Falls, OH 44221

and

Mark Gleichauf,
c/o The Board of Education of
Cuyahoga Falls City School District
431 Stow Ave
Cuyahoga Falls, OH 44221

    Defendants.

CASE NO.

JUDGE

**COMPLAINT**

(Jury Demand Endorsed Hereon)

Plaintiff Anne K. Alfano ("Alfano"), for her Complaint against Defendants the Board of Education of Cuyahoga Falls City School District ("Board of Education"), Todd Nichols, and Mark Gleichauf (all Defendants are collectively referred to as "Defendants") alleges as follows:

### PARTIES

1. Alfano is a resident of the State of Ohio.

2. At all times relevant to this lawsuit, Alfano was an "employee" within the meaning of:

O.R.C.§ 4112.02; O.R.C. § 4112.99; O.R.C. § 2745.01; O.R.C. § 4123.90; the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and, the Americans with Disabilities Act, as Amended 42 U.S.C. § 12101, *et seq.*("ADAAA").

3. Defendant Cuyahoga Falls City School District ("CFCS") is a city school district as defined by O.R.C. § 3311.02 with its principal place of business in Cuyahoga Falls, Ohio.

4. The Board of Education of the Cuyahoga Falls City School District ("Board of Education"), is the governing body for CFCS.

5. At all times relevant to this lawsuit, the Board of Education was an "employer" and a "person" within the meaning of: O.R.C. § 4112.02; O.R.C. § 4112.99; O.R.C. § 2745.01; O.R.C. § 4123.90; the FMLA and the ADAAA.

6. The Board of Education is a political subdivision located in Cuyahoga Falls, Ohio capable of being sued pursuant to O.R.C. § 3313.17.

7. At all times relevant to this lawsuit, Todd Nichols ("Nichols") was Superintendent for CFCS.

8. At all times relevant to this lawsuit, Nichols was an agent, servant and/or supervisory or management employee of CFCS, acting in the course and scope of his agency, service, and/or employment, and possessing actual or apparent authority over hiring, firing, advancement, and other terms and conditions of employment.

9. At all times relevant to this lawsuit, Mark Gleichauf ("Gleichauf") was Deputy Superintendent for CFCS.

10. At all times relevant to this lawsuit, Gleichauf was an agent, servant and/or supervisory or management employee of CFCS, acting in the course and scope of his agency, service, and/or employment, and possessing actual or apparent authority over hiring, firing, advancement, and other terms and conditions of employment.

2

11. At all times relevant to this lawsuit, the Board of Education was an agent, servant and/or supervisory or management employee of CFCS, acting in the course and scope of its agency, service, and/or employment, and possessing actual or apparent authority over hiring, firing, advancement, and other terms and conditions of employment.

## JURISDICTION AND VENUE

12. Plaintiff filed a timely charge of discrimination on the basis of disability, and retaliation, with the Equal Employment Opportunity Commission. The charge included the claims set forth by Plaintiff in this Complaint. Plaintiff received a "right-to-sue" letter from the EEOC less than ninety days since the commencement of this action.

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because one or more of the claims involved arise under the Constitution and laws of the United States.

14. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

## GENERAL ALLEGATIONS

16. From approximately August of 2008 until July 31, 2013, Alfano was employed by CFSC as the Cuyahoga Falls High School Administrative Principal.

17. After five years of superior performance and being awarded Educator of the Year for all of CFCS, Alfano was offered and accepted an administrative position with the CFCS's Central Administrative Office.

18. CFCS specifically created this administrative position for Alfano based upon her past success with increasing overall performance metrics.

19. Alfano began her new administrative position as Coordinator of Teaching and Learning

("Coordinator") on August 1, 2013, where she was employed until July 31, 2014.

20.  Alfano's new job description and performance goals had not been completed when she began as Coordinator on August 1, 2013. Defendants Nichols and Gleichauf informed her that both a job description and goals would be provided to her by the end of August 2013.

21.  On August 9, 2013, Alfano was diagnosed with stage two breast cancer.

22.  On or about August 10, 2013, Alfano informed CFCS's then Director of Human Resources, Mike Englert, as well as Nichols and Gleichauf, that she was diagnosed with breast cancer and would be taking medical leave to undergo surgery and treatment.

23.  Stage two breast cancer is a disability within the meaning of the ADAAA as both the cancer and the treatment substantially limits one or more major life activities.

24.  Stage two cancer is a serious medical condition within the meaning of the FMLA.

25.  Defendants failed to engage in a meaningful interactive process to determine what accommodations would be made to Alfano.

26.  Defendants failed to provide Alfano with the required notices that her cancer related absences would be protected by the FMLA.

27.  During her first and only year as Coordinator, Alfano endured a myriad of surgeries, medical tests, invasive treatment protocols, and debilitating side effects.

28.  Throughout her cancer treatment, Alfano continued to work when she was able, provided timely notice of the need for medical leave and sick time, and provided timely medical documentation as requested by CFCS. At no time did Alfano exceed the amount of sick time or medical leave available to her under her written contract or the Ohio Revised Code.

29.  During her cancer treatment, Alfano requested a reasonable accommodation, including a reduced schedule and/or modified work hours. CFCS initially granted her request to work from home, then withdrew permission, and then later grated it again.

4

30. Thereafter, Gleichauf and Nichols scheduled mandatory meetings on Alfano's "work from home" days, thereby effectively denying the accommodation.

31. From August 2013 through July 31, 2014, no one at CFCS provided Alfano with a job description articulating her essential and non-essential duties.

32. From August 2013 through December 2013, no one at CFCS provided Alfano with any performance goals.

33. Gleichauf and Nichols harassed, belittled, reprimanded and sabotaged Alfano because of her cancer-related disability and her use of medical leave. Gleichauf and Nichols set Alfano up for failure and conspired to terminate Alfano because of her disability and use of medical leave.

34. Gleichauf, Nichols, and members of CFCS's human resources repeatedly harassed Alfano with duplicative requests for medical documentation.

35. In December 2013, Nichols completed a negative evaluation of Alfano's performance based solely upon her disability and her exercise of FMLA qualified medical leave.

36. Nichols did not present the evaluation to Alfano as required by CFCS policy and the Ohio Revised Code.

37. Nichols placed the evaluation on Alfano's desk, under a stack of papers.

38. When Alfano found the evaluation and asked Nichols about it, he admitted that he negatively evaluated her because she was sick and/or on medical leave so often during her first five months that there was "nothing to evaluate." He also told her that there was no way to know if she would have performed well had he provided her with a job description and performance goals as required by law.

39. Alfano advised Nichols that the December 2013 negative evaluation violated Federal and Ohio law and that she would be filing a complaint with CFCS's human resources.

40. On January 21, 2014 Alfano filed a complaint of disability discrimination with Human

Resources Director, Melvin Brown.

41. In or around the end of January, 2014, Alfano also filed a complaint with the EEOC alleging disability discrimination. Upon information and belief, CFCS was informed of her complaint in February, of 2014.

42. In May, 2014, Nichols issued another negative performance evaluation based upon her disability and use of medical leave, stressing that her absences "have created a difficult work situation within the Department of College and Career Readiness." Based on the negative December 2013 and May 2014 evaluations, both of which penalized her for her disability and for using medical leave, Nichols recommended to the Board of Education that Alfano's contract not be renewed.

43. Nichols issued the May 2014 negative performance evaluation and recommended that the Board of Education not renew Alfano's contract because she reported CFCS's illegal disability discrimination to human resources and the EEOC.

44. Nichols issued the December 2013 and May 2014 negative performance evaluations and recommended that the Board of Education not renew Alfano's contract because of her disability and her use of medical leave.

45. On May 20, 2014, the Board of Education approved Nichol's recommendation that Alfano's contract not be renewed. Although Alfano was statutorily entitled to be heard by the Board of Education before a vote on her contract renewal, Nichols and the Board of Education denied her that right.

46. The Board of Education approved Nichol's recommendation that Alfano's contract not be renewed in whole or in part because of her disability and her use of medical leave.

47. The Board of Education approved Nichol's recommendation that Alfano's contract not be renewed because she reported CFCS's illegal disability discrimination and retaliatory conduct to

6

human resources and the EEOC.

## FIRST CLAIM FOR RELIEF – DISABILITY DISCRIMINATION UNDER OHIO LAW
## (BOARD OF EDUCATION)

48. Alfano hereby incorporates all allegations in the paragraphs above as if fully rewritten herein.

49. Alfano is a member of a protected class because she is a qualified individual with a disability.

50. Alfano was qualified for the position she held with the Board of Education and could have performed the essential functions of her job with a reasonable accommodation.

51. Alfano requested a reasonable accommodation, which was effectively denied by the Board of Education.

52. Alfano requested the reasonable accommodation of time off from work, and the Board of Education criticized her work performance because of the time she took off as an accommodation of her disability.

53. The Board of Education failed to engage with Alfano in an interactive process to determine what reasonable accommodations could be given that would allow her to perform the essential functions of her job.

54. The Board of Education took adverse action against Alfano by negatively evaluating her performance, failing to renew her contract and otherwise subjecting her to unfavorable treatment because of her disability and her accommodation.

55. As a direct and proximate consequence of the Board of Education's unlawful and discriminatory misconduct, described above, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

56. The Board of Education is therefore liable to Alfano for disability discrimination pursuant to O.R.C. §§4112.02 and 4112.99.

## SECOND CLAIM FOR RELIEF – AIDING AND ABETTING DISCRIMINATION
## (GLEICHAUF AND NICHOLS)

57. Alfano hereby incorporates all allegations set forth above as if fully rewritten herein.

58. By engaging in the practices described above, Defendants Gleichauf and Nichols aided, abetted, incited, compelled, or coerced another person in committing unlawful discriminatory practices, obstructed and prevented another person from complying with Ohio laws against discrimination, and/or attempted directly or indirectly to commit an unlawful discriminatory practice in violation of O.R.C. §4112.02(J).

59. As a direct and proximate consequence of Defendants Gleichauf and Nichols' unlawful and discriminatory misconduct, described above, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

60. Defendants Gleichauf and Nichols are therefore liable to Alfano for aiding and abetting discrimination pursuant to O.R.C. §§ 4112.02(J) and 4112.99.

61. The conduct of Defendants Gleichauf and Nichols, as described above, was done maliciously or with conscious disregard of the rights of Alfano and with a great probability of causing harm, for which these Defendants are liable for punitive damages.

## THIRD CLAIM FOR RELIEF – ADAAA
## (BOARD OF EDUCATION)

62. Alfano hereby incorporates all allegations set forth above as if fully rewritten herein.

63. Alfano is a member of a protected class because she is a qualified individual with a

8

disability.

64. Alfano was qualified for the position she held with CFCS and could have performed the essential functions of her job with a reasonable accommodation.

65. Alfano requested a reasonable accommodation, which was effectively denied by CFCS and the Board of Education.

66. CFCS and the Board of Education failed to engage with Alfano in an interactive process to determine what reasonable accommodations could be given that would allow her to perform the essential functions of her job.

67. CFCS and the Board of Education took adverse action against Alfano by refusing to renew her contract and otherwise subjecting her to unfavorable treatment because of her disability.

68. As a direct and proximate consequence of the unlawful and discriminatory misconduct, described above, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

69. The Board of Education is therefore liable to Alfano for disability discrimination pursuant to the ADAAA.

## FOURTH CLAIM FOR RELIEF - FMLA

## (BOARD OF EDUCATION)

70. Alfano hereby incorporates all allegations contained above as if fully restated herein, and further states that she was eligible for FMLA leave at the time when she received her first and second negative performance evaluations (December 2013, and May 2014, respectively).

71. On or around August 10, 2013, Alfano notified the Board of Education, by and through

9

its agents, servants and managerial employees of her need for medical leave for cancer treatment.

72. The Board of Education failed to provide Alfano with an "Eligibility" notice under the FMLA.

73. The Board of Education failed to provide Alfano with a written "Rights and Responsibilities" notice detailing Alfano's specific expectations and obligations, and explaining any consequences of a failure to meet these obligations.

74. The Board of Education failed to provide Alfano with a written "Designation" notice, stating whether Alfano's request for leave was approved.

75. Between the time Alfano notified the Board of Education of her cancer diagnosis and treatment plan and the time that the Board of Education voted not to renew her contract, no one provided her with any notice of rights or request for certification or otherwise informed her of her rights under the FMLA.

76. The Board of Education did not provide Alfano with any notices because Defendants intended to remove Alfano from her position for taking medical leave.

77. By failing to follow the notice requirements of the FMLA, the Board of Education interfered with, restrained, and/or denied Alfano's exercise of her FMLA rights.

78. By negatively evaluating her performance based upon her use of qualified medical leave, the Board of Education interfered with, restrained, and/or denied Alfano's exercise of her FMLA rights.

79. By requesting medical leave, Alfano engaged in an activity protected by the FMLA.

80. Alfano's exercise of her protected rights, and her attempt to exercise her protected rights, was known by the Board of Education.

81. But for the Board of Education's unlawful actions, described herein, Alfano would have qualified for protected leave under the Family and Medical Leave Act.

82. The Board of Education voted not to renew Alfano's contract in retaliation for her protected activity, in violation of the FMLA.

83. By interfering with, restraining, and/or denying Alfano's exercise of her FMLA rights and attempt to exercise her protected rights, and by retaliating against her for her protected activity, the Board of Education caused Alfano damages.

84. As a direct and proximate result of these violations of the FMLA, Alfano lost income, wages, and benefits; incurred costs, and expenses, such as attorneys fees and costs of suit; and was otherwise injured.

85. Defendants' actions were willful and/or in reckless disregard of Alfano's protected rights.

86. The Board of Education is therefore liable to Alfano for violating the FMLA.

## FIFTH CLAIM FOR RELIEF – RETALIATION

## (ALL DEFENDANTS AS TO O.R.C. 4112)

## (BOARD OF EDUCATION ONLY AS TO THE ADAAA)

87. Alfano hereby incorporates all allegations set forth above as if fully rewritten herein.

88. Alfano is a member of a protected class because she opposed unlawful disability discrimination and participated in the filing of a complaint of disability discrimination and retaliation against Defendants.

89. Defendants Gleichauf and Nichols aided, abetted, incited, compelled, or coerced another person in committing unlawful retaliation, obstructing and preventing another person from complying with Ohio laws against discrimination and retaliation, and/or attempted directly or indirectly to commit an unlawful retaliatory practice in violation of O.R.C. §4112.02(J).

90. Defendants took adverse action against Alfano by negatively evaluating her performance, refusing to renew her contract, and otherwise subjecting her to unfavorable treatment because of her opposition to illegal discrimination.

91. But for Alfano's opposition, Defendants would not have retaliated against her as articulated above.

92. As a direct and proximate result of Defendants retaliation, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

93. The Board of Education is therefore liable to Alfano for retaliation pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, and all Defendants are liable to Alfano for retaliation pursuant to Ohio Revised Code sections 4112.02 and 4112.99.

94. The conduct of Defendants Gleichauf and Nichols, as described above, was done: maliciously or with conscious disregard of the rights of Alfano and with a great probability of causing harm, for which Defendants Gleichauf and Nichols are liable for punitive damages.

## SIXTH CLAIM FOR RELIEF - BREACH OF CONTRACT
## (BOARD OF EDUCATION)

95. Alfano hereby incorporates all allegations in paragraphs above as if fully rewritten herein.

96. At all times relevant herein, Alfano was an administrator within the meaning of section 3119.02 of the Ohio Revised Code.

97. At all times relevant to her claims, Alfano was employed pursuant to a written employment contract (attached).

98. In exchange for her promise to work as an administrator, the Board of Education

12

promised to provide Alfano with certain remuneration and benefits, including a certain number of sick days.

99. The parties' written employment contract constitutes an enforceable legal contract supported by valid consideration.

100. Alfano was also entitled to sick leave in accordance with section 3319.141 of the Ohio Revised Code.

101. The sick leave provision contained in O.R.C. § 3319.141 is binding on the Board of Education and was an implied term of Alfano's employment contract.

102. CFCS and the Board of Education took adverse action against Alfano by negatively evaluating her performance, refusing to renew her contract, and otherwise subjecting her to unfavorable treatment because she exercised her contractual and statutory right to take sick days/leave.

103. In taking such adverse action, CFCS and the Board of Education breached Alfano's employment contract.

104. As a direct and proximate consequence of this breach, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

## SEVENTH CLAIM FOR RELIEF - BREACH OF CONTRACT
## (BOARD OF EDUCATION)

105. Alfano hereby incorporates all allegations in paragraphs above as if fully rewritten herein.

106. At all times relevant herein, Alfano was an administrator within the meaning of O.R.C. § 3119.02.

107. O.R.C. § 3319.02(D)(4) requires that before an administrator's contract is not renewed, the Board of Education must notify the subject employee on "the date that the contract expires and that the employee may request a meeting with the board. Upon request by such an employee, the board shall grant the employee a meeting in executive session. In that meeting, the board shall discuss its reasons for considering renewal or nonrenewal of the contract. The employee shall be permitted to have a representative, chosen by the employee, present at the meeting."

108. O.R.C. §3319.02(D)(4) is binding on the Board of Education and was an implied term of Alfano's employment contract.

109. Alfano duly requested a meeting with the Board of Education so that she and her chosen legal representative could be present at the meeting to discuss Nichol's recommendation not to renew her contract.

110. The Board of Education summarily denied Alfano's request in violation of O.R.C. § 3119.02(D)(4) and voted not to renew Alfano contract without giving her or her counsel an opportunity to be heard.

111. In doing so, the Board of Education breached Alfano's employment contract.

112. As a direct and proximate consequence of this breach, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

113. In addition to damages in contract, Alfano is entitled to reinstatement at the same pay grade for a period of two years under O.R.C. §3119.02 (D)(5).

### EIGHTH CLAIM FOR RELIEF - BREACH OF CONTRACT

## (BOARD OF EDUCATION)

114. Alfano hereby incorporates all allegations in paragraphs above as if fully rewritten herein.

115. O.R.C. § 3119.02. requires that administrator evaluations measure the effectiveness of the employee in performing the duties included in the job description.

116. Alfano was deprived of her right to receive a job description and performance goals to guide her efforts.

117. Alfano was never provided a job description, and was only provided with performance goals just one week before she received a negative performance evaluation in December, 2014.

118. CFCS and the Board of Education failed to follow the performance evaluation procedures set forth in the Ohio Revised Code and/or CFCS policy.

119. The performance evaluations upon which the Board of Education based Alfano's nonrenewal did not comply with O.R.C. § 3119.02(D)(2)(c)(i)(ii) or CFCS policy.

120. Alfano was not provided a written copy of her preliminary evaluation as required by O.R.C. § 3119.02(D)(2) and CFCS policy.

121. O.R.C. § 3119.02(D)(2) is binding on the Board of Education and was an implied term of Alfano's employment contract.

122. By failing to comply with the requirements of O.R.C. § 3119.02(D)(2), the Board of Education breached Alfano's employment contract.

123. As a direct and proximate consequence of this breach, Alfano suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

124. In addition to damages in contract, Alfano is entitled to reinstatement at the same pay

grade for a period of two years under O.R.C. § 3119.02 (D)(5).

**WHEREFORE,** Alfano prays for judgment against Defendants, jointly and severally, for: back pay; front pay and other equitable relief; compensatory damages in amounts that will fully and fairly compensate her for her injury, damage, and loss; for an award of punitive damages in such an amount as will sufficiently punish and deter the wrongful conduct of the Defendants; for attorneys' fees and costs of suit; and, for such other relief as the Court deems just, all in an amount in excess of twenty-five thousand dollars.

## JURY DEMAND

A trial by jury is hereby demanded in the within matter in the maximum number of jurors allowed by law.

Respectfully submitted,

*/s/ Cathleen M. Bolek*

CATHLEEN M. BOLEK (0059884)
**Bolek Besser Glesius, LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com


K. RENEE VINING-SAKS (0078566)
**Vining Law Office, LLC**
27873 South Woodland Rd.
Pepper Pike, OH 44124
T: 216-904-3621
vininglawoffice@yahoo.com


*Counsel for Plaintiff*

## ADMINISTRATOR'S CONTRACT

This is an agreement between the Board of Education of the Cuyahoga Falls City School District, (Board of Education) and **Anne Alfano**, (Administrator), executed in accordance with action of the Board of Education taken on the **28th** day of **March, 2011**. The Board of Education hereby employs the Administrator for a period of **three (3)** year(s), commencing on **August 1, 2011** and ending on **July 31, 2014**. The Administrator shall perform the duties of that position as prescribed by the laws of the State of Ohio and by the rules, regulations and position description adopted by the Board of Education, and in accordance with the terms and conditions of this agreement.

The Board of Education and Administrator agree as follows:

1. That the Board of Education will pay the Administrator an annual salary of **Ninety-six thousand four hundred fifty-six dollars ($96,456)** to be paid in twenty-six (26) equal installments in accordance with the policy of the Board of Education.

2. That the annual salary of the Administrator may be increased during the term of this contract, but shall not be reduced except as provided by law.

3. That the Board of Education will reimburse the Administrator for the use of his/her personal automobile in the performance of duties at the Internal Revenue mileage rate, as approved by the Superintendent or designee.

4. That the Administrator shall receive such life insurance and paid health insurance and other fringe benefits as provided by Board of Education policy for its certificated employees.

5. That the Administrator shall receive sick leave as provided by the law. Earned sick leave may be accumulated as authorized by Board of Education policy.

6. That the Administrator shall receive **20** days vacation annually exclusive of legal holidays. Vacation shall be taken within twelve (12) months in the year in which it is earned. The Administrator shall be entitled to accumulate unused vacation days to a maximum of five (5) days, in addition to the current year entitlement of 20 (maximum of 25 available days in any year).

7. That the Administrator will work a total of **228** days each year excluding **20** vacation days and **12** holidays (this shall be used in the calculation of severance pay). These days include each day of the school calendar and in addition, such number of days as may be required by the Superintendent or the Board of Education, to enable the school district to complete the school year.

8. That the Administrator will furnish, throughout the life of this contract, a valid and appropriate certificate to perform the duties of the position.

9. That upon request of the Administrator, the Board of Education shall withhold and transfer a portion of the Administrator's salary to a tax-deferred annuity program chosen by the Administrator from such program as may be adopted by the Board of Education.

10. That the Administrator shall be encouraged to attend appropriate professional meetings upon prior approval, the actual and necessary expenses of such attendance to be paid by the Board of Education in accordance with Board of Education policy.